DOWNEY BRAND LLP
MATTHEW J. WEBER (Bar No. 227314)
AVALON C. JOHNSON (Bar No. 288167)
3425 Brookside Road, Suite A
Stockton, CA 95219-1757
Telephone: (209) 473-6450
Facsimile: (209) 473-6455
mweber@downeybrand.com
ajohnson@downeybrand.com

Attorneys for Plaintiff
RICE AIRCRAFT SERVICES, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICE AIRCRAFT SERVICES, INC., | Case No. |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | (1) Intentional Interference with Contract |
| PATRICK SOARS, an individual, PETER WIELAND, an individual, WIELAND AVIATION GROUP, an Australian corporation, and AUSTRALIAN NATIVE LANDSCAPES PTY LTD, an Australian proprietary limited company, | (2) Interference with Prospective Economic Advantage<br>(3) Defamation<br><br>**Demand for Jury Trial** |
| Defendants. | |

COMES NOW Plaintiff RICE AIRCRAFT SERVICES, INC. ("Rice" or "Plaintiff"), a California corporation, bringing causes of action against Defendants PATRICK SOARS ("Soars"), an individual, PETER WIELAND ("Wieland"), an individual, WIELAND AVIATION GROUP ("WAG"), an Australian corporation, and AUSTRALIAN NATIVE LANDSCAPES PTY LTD ("ANL"), an Australian proprietary limited company (collectively "Defendants"). Rice alleges as follows:

## THE PARTIES

1. Rice is a California corporation with its principal place of business in California.

2. Soars is a resident and citizen of Australia.

///

3. Wieland is a resident and citizen of Australia.

4. WAG is an Australian corporation with its principal place of business in Australia.

5. ANL is an Australian proprietary limited company. On information and belief, ANL's sole shareholder is Soars.

6. Rice is informed and believes, and based thereon alleges, that each Defendant was the agent or partner of each of the other Defendants, and was at all times acting within the scope of such agency or partnership at the direction of the other Defendants.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because Rice is a citizen of California and Defendants are citizens of a foreign state and the amount in controversy exceeds $75,000.

8. The exercise of personal jurisdiction over Defendants comports with the laws of the State of California and the constitutional requirements of due process because Defendants, as a result of transacting business in California and/or otherwise establishing a presence in California, have minimum contacts with the state of California sufficient to subject Defendants to personal jurisdiction in this state.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Yuba County, California. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to personal jurisdiction here and there is not another district in which the action may otherwise be brought.

## GENERAL BACKGROUND

10. Rice is a privately held and operated company located in Olivehurst, California. Rice specializes in providing structural repair, training, aircraft overhaul and maintenance services, spare parts, engine and transmission overhauls, and selling Bell Helicopters. Rice sells parts and whole aircraft to customers internationally.

11. In or about 2009, Rice was interested in purchasing twenty military-grade helicopters from the Federal Republic of Germany ("subject helicopters"). The German

government expressed to Rice that it was amenable to selling the subject helicopters should Rice obtain the necessary approvals from the United States, including the Department of State[1] ("the approvals").

12. Rice lacked the expertise in dealing with the Department of State to obtain approvals, and turned to an individual named Thach Nguyen ("Nguyen") for assistance. Nguyen was introduced to Rice through a mutual contact, and assisted Rice in a previous deal with the Philippine government prior to the purchase of the subject helicopters in Germany.

13. Nguyen represented to Rice that he was a lawyer and was an employee of the United States Department of State, and could therefore assist Rice in obtaining the approvals from the United States, and could also assist Rice in successfully bidding on a contract for the sale of the subject helicopters to the Philippines.

14. Thereafter, Nguyen represented to Rice, and Rice believed, that Nguyen had assisted Rice in obtaining the approvals from the United States. These approvals were quickly granted.

15. In or about 2011, Rice and WAG discussed entering into a partnership for the purchase of the subject helicopters, such that Rice and WAG would share the costs of purchasing the subject helicopters and would then jointly refurbish and possibly sell the subject helicopters.

16. Unfortunately, Wieland and his companies were experiencing financial hardships, which prevented him from carrying his part of the proposed partnership and due to his financial troubles Wieland and his companies went into receivership in 2013.

17. Given the insolvent state of WAG, Rice was unable to partner with WAG and Wieland for the purchase of the subject helicopters from Germany, and was instead forced to use a substantial amount of its own funds to purchase the subject helicopters from the German government.

///

---

[1] The Directorate of Defense Trade Controls ("DDTC"), a branch of the United States Department of State, controls the export and temporary import of defense articles and defense services covered by the United States Munitions List. Because the subject helicopters are listed on the United States Munitions List, their purchase, import, sale, and export require the approval of the DDTC. See 22 C.F.R. § 121.3.

1392352.1

3

COMPLAINT

18. Thus, Rice's President and CEO, Robert Rice ("Mr. Rice"), traveled to Germany with Nguyen, and Rice purchased the subject helicopters from Germany.

19. Rice then transported the subject helicopters to the United States, where Rice refurbished the subject helicopters in preparation for their sale to the government of the Philippines. Because WAG was insolvent, Rice was forced to refurbish the subject helicopters using a substantial portion of its own funds, rather than sharing in the costs of refurbishment with WAG and Wieland as was previously planned.

20. Subsequently, Rice met with EagleCopters Ltd. ("Eagle") regarding forming a partnership to sell the subject helicopters to the Philippines. Rice and Eagle entered into a partnership for this sale.

21. Following the refurbishment of the subject helicopters, Rice sought to sell the subject helicopters to the government of the Philippines for use by the Philippines Air Force. Nguyen went to the Philippines to represent Rice in bidding on contracts with the government of the Philippines. Nguyen made several bids on behalf of Rice. However, despite Rice being the only bidder capable of immediately performing on the contract, Rice did not receive the contract.

22. In or about 2013, after numerous failed bids, Rice received a call from a representative familiar with the tender for the subject helicopters for the government of the Philippines. The representative, now officially an agent of Rice in the Philippines, asked a representative of Rice to come to the Philippines to discuss the bids.

23. Upon arrival in the Philippines, Rice learned that Nguyen was not qualified to represent Rice in the purchase and sale of the helicopters and was not an agent of the United States or a lawyer, and that the majority of the approvals obtained by Nguyen were illegitimate.

24. Despite this setback, Rice ultimately did enter into a contract with the government of the Philippines in December 2013 for the sale of the subject helicopters for a total of 1,264,977,615.52 Philippine Pesos (PhP). In March 2014, a Letter of Credit was opened with the exchange rate of 45.35 PhP to $1.00 for the sale of the subject helicopters. Rice funded all costs associated with this sale, without any assistance from Wieland or WAG.

///

25. Prior to and following Rice's entry into a contract with the Philippine government, Defendants and Nguyen have demanded that Rice pay them a portion of the profits from the sale of the subject helicopters to the Philippine government.[2]

26. Defendants have no right to the proceeds of the sale of the subject helicopter, as they were not partners of Rice for the purchase and sale of the helicopters and funded none of the costs associated with the sale and subsequent purchase of the helicopters.

27. After Rice made it clear that Defendants were not entitled to payment for the sale of the subject helicopters, Defendants sought to interfere first with Rice's bid for the contract, and then with Rice's contract with the Philippine government for the sale of the subject helicopters.

28. Defendants and Nguyen thus sent false statements regarding Rice, including statements that Rice was not the true owner of the subject helicopters and had no right to sell the subject helicopters, and that in fact WAG owned the helicopters. Both Wieland and Soars, on behalf of both WAG and ANL, sent letters containing these false statements on multiple occasions, to not only the government of the Philippines, but also the government of the United States, the German Government, as well as Rice's partner in the sale of the helicopters, Eagle.

29. These letters were sent in an attempt to impair Rice's contract with the Philippines and in an attempt to force Rice to pay money to Defendants to which Defendants are not entitled. On information and belief, Defendants believed that by making such false statements to the Philippines, Eagle, the German Government, and the United States, Rice would pay a portion of the proceeds from the sale of the helicopters to Defendants in exchange for Defendants' agreement to no longer send such false statements.

30. Defendants thus sought to prevent Rice from making or completing its contract with the Philippine government for the sale of the subject helicopters unless substantial sums were paid to Nguyen and Defendants.

31. Rice incurred hundreds of thousands of dollars having to clear up the false statements contained in Defendants' letters.

---

[2] Nguyen was ultimately arrested on September 16, 2014, for his conduct related to the purchase and sale of the subject helicopters, and is now facing charges in the Eastern District of Virginia for false impression in violation of 18 U.S.C. § 912, and wire fraud in violation of 18 U.S.C. § 1343.

1392352.1

5

32. As the direct result of Defendants' false statements, Rice's award of the contract from the Philippine government was delayed, resulting in payment to Rice being delayed. This delay cost Rice millions of dollars due to a change in the exchange rate during the delay. Specifically, the tender for twenty-one helicopters to the Philippine government was put out for bid on or about October 2012 for a total of 1,264,977,615.52 Philippine Pesos (PhP). Due to the multiple failed bid submissions by Defendant, Rice was not declared the winner of the tender until December 2013. Thereafter, in March 2014, a Letter of Credit was opened with the exchange rate of 45.35 PhP to $1.00. Over this period of time, during which Rice had many opportunities to win the tender, the exchange rate reached an optimum peak of 40.46 PhP to $1.00, in January 2013. Due to the delay caused by Defendants false statements sent to the Philippines, the United States, and Eagle, Rice has lost an estimated $3,371,231.14 as a result of the exchange rate differential.

33. Moreover, as the direct result of Defendants' repeated false statements about Rice, Rice's performance on the contract with the Philippine government for the sale of the subject helicopters was delayed as Rice was forced to take time to clear up Defendants' false statements. Rice may incur financial penalties from late performance of Rice's contract with the government of the Philippines, amounting to at least $2,786,328.60.

## FIRST CAUSE OF ACTION

### (Interference with Contractual Relations)

34. Rice incorporates by reference Paragraphs 1 through 33 as if fully set forth herein.

35. Rice had a valid contract with the government of the Philippines for the purchase and sale of the subject helicopters.

36. Defendants knew that Rice had a valid contract with the government of the Philippines for the purchase and sale of the subject helicopters.

37. Defendants' intentional act of stating to the government of the Philippines that Rice did not own the helicopters and therefore had no right to sell the helicopters, and that instead Defendants owned the helicopters, was designed to induce a breach or disruption of Rice's contractual relationship with the Philippine government.

38. Defendants' intentional act of stating to the government of the United States that Rice did not own the helicopters and therefore had no right to sell the helicopters, and that instead Defendants owned the helicopters, was designed to induce the United States to prevent Rice from performing on its contract, and was thus designed to induce a breach or disruption of Rice's contractual relationship with the Philippine government.

39. Defendants' intentional act of stating to Eagle that Rice did not own the helicopters and therefore had no right to sell the helicopters, and that instead Defendants owned the helicopters, was designed to induce Eagle to withdrawing from its partnership with Rice such that Rice would not be able to perform on its contract with the Philippines, and was thus designed to induce a breach or disruption of Rice's contractual relationship with the Philippine government.

40. As the result of Defendants' intentional acts of interference, Rice's contract with the government of the Philippines was significant delayed and Rice lost money as a result of, among other things, covering the costs of clearing up the false statements Defendants' letters, the change in exchange rate between when Rice originally bid on the contract and when Rice ultimately received the contract and was able to open a Letter of Credit, and the financial penalties for late performance.

41. The aforementioned conduct of Defendants constitutes "malice," "oppression," and "fraud," in that the conduct was fraudulent, intended by Defendants to cause injury to Rice, was despicable conduct carried on by Defendants with a willful disregard of the rights of Rice, and was conduct that subjected Rice to unjust hardship in conscious disregard of its rights. Rice is therefore entitled to punitive and exemplary damages against Defendants an amount according to proof at trial.

WHEREFORE, Rice seeks relief as set forth in the prayer for relief.

## SECOND CAUSE OF ACTION

### (Interference with Prospective Economic Advantage)

42. Rice incorporates by reference Paragraphs 1 through 41 as if fully set forth herein.

///

43. At all times relevant herein, an economic relationship exists between Rice and the government of the Philippines, and existed prior to the time that Rice and the Philippines formally entered into their contract for the sale of the subject helicopters.

44. Defendants knew and were aware of the economic relationship existing between Rice and the Philippines.

45. By sending false statements about Rice to the government of the Philippines, including statements that Rice does not own the subject helicopters and has no right to sell the subject helicopters, and that instead Defendants own the subject helicopters, Defendants intentionally interfered with Rice's economic advantages and opportunities by attempting to induce the Philippines to either not enter into a contract with Rice, or to breach its contract with Rice.

46. By sending false statements about Rice to the government of the United States, including statements that Rice does not own the subject helicopters and has no right to sell the subject helicopters, and that instead Defendants own the subject helicopters, Defendants intentionally interfered with Rice's economic advantages and opportunities by attempting to induce the United States to prevent Rice from either entering into a contract with the Philippines, or to cause Rice and/or the Philippines to breach the contract for the sale of the subject helicopters.

47. By sending false statements about Rice to Eagle, including statements that Rice does not own the subject helicopters and has no right to sell the subject helicopters, and that instead Defendants own the subject helicopters, Defendants intentionally interfered with Rice's economic advantages and opportunities by attempting to induce Eagle to end its partnership with Rice for the sale of the subject helicopters, which would cause Rice to breach its contract for the sale of the subject helicopters.

48. As a result of these intentional acts by Defendants, Rice's contract with the government of the Philippines was significant delayed and Rice lost money as a result of, among other things, covering the costs of clearing up the false statements Defendants' letters, the change in exchange rate between when Rice originally bid on the contract and when Rice ultimately

received the contract and was able to open a Letter of Credit, and the financial penalties for late performance.

49. The aforementioned conduct of Defendants constitutes "malice," "oppression," and "fraud," in that the conduct was fraudulent, intended by Defendants to cause injury to Rice, was despicable conduct carried on by Defendants with a willful disregard of the rights of Rice, and was conduct that subjected Rice to unjust hardship in conscious disregard of its rights. Rice is therefore entitled to punitive and exemplary damages against Defendants in an amount according to proof at trial.

WHEREFORE, Rice seeks relief as set forth in the prayer for relief.

## THIRD CAUSE OF ACTION

### (Defamation)

50. Rice incorporates by reference Paragraphs 1 through 49 as if fully set forth herein.

51. Defendants sent letters to the government of the Philippines, the government of the United States, and Eagle, making statements of fact that, among other things, that Rice does not own the subject helicopters and did not have a right to sell the subject helicopters, and that instead Defendants owned the subject helicopters.

52. These statements were therefore directly communicated to the government of the Philippines, the government of the United States, and Eagle.

53. These statements were and are false and were made for the purpose of injuring Rice's reputation, and was intended to deter the government of the Philippines and Eagle from associating with and/or transacting business with Rice.

54. These defamatory statements were false when made, were made with reckless abandon for the truth, and were not privileged as that term is defined in California Civil Code section 47, as Rice, and not Defendants, does in fact own the subject helicopters and did have the right to sell the subject helicopters to the government of the Philippines.

55. Defendants knew these facts, or at least failed to use reasonable care to determine the truth or falsity of the statements they made.

///

56. Because Defendants knew that the statements were false, Defendants made these statements with the specific intent of harming Rice's reputation and business interests.

57. As a result of Defendants' conduct, Rice has suffered injury to its business reputation. As a further result of Defendants' conduct, Rice's contract with the government of the Philippines was significant delayed and Rice lost money as a result of, among other things, covering the costs of clearing up the false statements Defendants' letters, the change in exchange rate between when Rice originally bid on the contract and when Rice ultimately received the contract and was able to open a Letter of Credit, and the financial penalties for late performance.

WHEREFORE, Rice seeks relief as set forth in the prayer for relief.

## PRAYER FOR RELIEF

Plaintiff Rice prays for judgment against Defendants as follows:

1. For compensatory damages against Defendants in an amount according to proof at trial.
2. For punitive damages against Defendants in an amount sufficient to punish and deter Defendant from engaging in the conduct set forth herein in the future;
3. For restitution against Defendants in an amount according to proof at trial;
4. For reasonable attorneys' fees and costs of suit allowed by law;
5. For prejudgment interest at the legal rate on all damages and other sums to be due to Rice; and
6. For such other and further relief as the Court deems just and proper.

DATED: December 10, 2014          DOWNEY BRAND LLP


By: _____/s/ Matthew J. Weber_____
MATTHEW J. WEBER
Attorneys for Plaintiff
RICE AIRCRAFT SERVICES, INC.