UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICE AIRCRAFT SERVICES, INC., | No. 2:14-cv-02878-MCE-EFB |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| PATRICK SOARS, et al., | |
| Defendants. | |

Plaintiff Rice Aircraft Services, Inc. ("Plaintiff") seeks monetary relief from Defendants Wieland Aviation Group ("WAG"), Australian Native Landscapes PTY LTD ("ANL"), and individual Defendants Patrick Soars ("Soars") and Peter Wieland ("Wieland") (collectively, "Defendants"). On April 24, 2015, the Court granted Plaintiff's request for entry of default against WAG and Wieland for failure to appear, plead, or answer Plaintiff's Complaint within the time allowed by law. See, e.g., Fed. R. Civ. P. 54(b), 55(b); E.D. Cal. Local R. 302(c)(19), 230. Presently before the Court is Soars and ANL's (collectively, "Moving Parties") Motion to Dismiss for Lack of Personal Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons set forth below, Defendants' Motion is GRANTED.[1]

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. See E.D. Cal. Local R. 230(g).

1

# BACKGROUND[2]

Plaintiff, a privately held and operated company located in California, specializes in, among other things, repairing and selling helicopters to customers both domestically and overseas. In 2009, Plaintiff was interested in purchasing twenty military-grade helicopters from the Federal Republic of Germany ("Germany"). Germany expressed to Plaintiff that it would be amenable to the sale if Plaintiff obtained the necessary resale approvals from the United States, including the Department of State. Plaintiff thereafter turned to an individual named Thach Nguyen ("Nguyen") for assistance. Nguyen represented to Plaintiff that he could also assist Plaintiff in successfully bidding on a contract for the sale of the helicopters to the government of the Philippines ("the Philippines"). He also thereafter advised that he had obtained the sought-after resale approvals.

In July 2011, Plaintiff, which believed it had obtained the necessary approvals, then entered into a partnership with WAG[3] to purchase the helicopters from Germany. Decl. of Rice Supp. Pl.'s Opp'n ¶ 6, ECF No. 24-1 ("Rice Decl."); see Compl. ¶ 15. However, immediately prior to purchasing the helicopters, WAG informed Plaintiff that it could not afford its half of the $1.8 million purchase price. Rice Decl. ¶ 8; see Compl. ¶ 17. As a result, Plaintiff used a substantial amount of its own funds to purchase the helicopters and found an individual investor, Michael Haus[4] ("Haus"), as well. Rice Decl. ¶ 8; Compl. ¶ 17.

After purchasing and transporting the helicopters to California, Plaintiff had them refurbished. WAG then contacted Plaintiff again to offer to send $400,000 to help pay to

---

[2] Unless otherwise noted, the factual assertions in this section are based on the allegations in Plaintiff's Complaint, (ECF No. 1).

[3] Plaintiff alleges WAG is an Australian corporation with its principal place of business in Australia. Compl. ¶ 4.

[4] Plaintiff contends that Haus is a resident of California. Pl.'s Mem. Supp. Opp'n to Mot. to Dismiss 16:7-11, ECF No. 24 ("Pl.'s Opp'n"). However, Plaintiff's Complaint makes no reference otherwise to Haus.

import and refurbish the helicopters. Rice Decl. ¶ 11. A wire transfer was made to Plaintiff but came from ANL[5]. Id.

Thereafter, Soars, ANL's managing director,[6] e-mailed Plaintiff's representative, informing Plaintiff that Peter Wieland had promised Soars one of the twenty imported helicopters in exchange for loaning Wieland the $400,000 wired to Plaintiff. Rice Decl. ¶ 12; see Ex. E. Soars then traveled to Plaintiff's office in California "to inspect and organise [sic] the transfer of [his helicopter] . . . to Australia per the agreement he made with . . . [Wieland]." Rice Decl. ¶ 14; see Exs. F, G. During that trip, Plaintiff agreed that it would repay the $400,000 to Soars. Rice Decl. ¶ 13. Plaintiff explained that Soars could not take any of the helicopters at that time, but that Soars could have a helicopter from a later batch that Plaintiff anticipated purchasing. Rice Decl. ¶ 14. The agreement was memorialized in writing and signed by Plaintiff, Wieland and Soars. Rice Decl. ¶ 14; see Exs. F, G.

In October 2012, Plaintiff's tender for twenty-one helicopters to the Philippines was put out for bid. Around that time, Plaintiff, Nguyen, and Wieland amended their July 31, 2011, agreement as a result of Wieland's financial troubles.[7] Rice Decl. ¶ 16; see Ex. H. Consequently, Plaintiff brought in a new investor, EagleCopters Ltd.[8] ("Eagle"), to assume WAG's contractual obligations. Rice Decl. ¶ 16; see Ex. H.

Following the refurbishment of the helicopters, Nguyen went to the Philippines and made several bids on the contract on behalf of Plaintiff. However, Plaintiff did not

---

[5] ANL is an Australian company headquartered in Australia. Decl. of Soars Supp. Defs. Soars and ANL's Mot. to Dismiss ¶ 1, ECF No. 16-2 ("Soars Decl."). Furthermore, Soars states that ANL's operations are confined to Australia, and that it has no offices, facilities, employees, or agents in the United States. Id. Soars also states that ANL does not conduct any business operations in the United States or sell any products in the United States. Id. Although, ANL purchased a helicopter from Plaintiff in 2007, that transaction is unrelated to the facts giving rise to this suit. Pl.'s Opp'n 12:3-5; Rice Decl. ¶ 3; Ex. A.

[6] Soars states that he is a citizen and resident of Australia. Soars Decl. ¶ 1.

[7] Nguyen was a party to the July 31, 2011 partnership agreement, but his obligations under that partnership agreement are unclear. See Pl.'s Opp'n 2:6-16.

[8] Plaintiff states that Eagle is a Canadian corporation. Rice Decl. ¶ 17.

initially receive the contract.  After numerous failed bids, Plaintiff was informed that Nguyen was not qualified to represent Plaintiff in the purchase and sale of the helicopters.  Moreover, Plaintiff discovered that the majority of the approvals obtained by Nguyen were illegitimate.[9]

Subsequently, in August 2013, Soars e-mailed Plaintiff to advise that he had purchased WAG and that his "lawyers [were] completing the transfer of [WAG] . . . in the next 24 hours."  Rice Decl. ¶ 19; see Ex. I.  The next month, Soars sent Plaintiff an e-mail stating that he had finalized the purchase of WAG, and that he intended to come to California "in the next two weeks" to take a helicopter back to Australia.  Rice Decl. ¶ 20; see Ex. J.  With that e-mail, Soars attached a Purchase Agreement reflecting ANL's purchase of WAG.  Rice Decl. ¶ 20; Ex. J.

In December 2013, Plaintiff entered into a contract with the Philippines for the sale of the helicopters.  Around this same time, Soars sent a letter to Plaintiff, informing it that Plaintiff was not authorized to sell the helicopters to a third party.  Rather, Soars believed WAG legally owned the helicopters because WAG was the "end user" under the relevant government approvals for the re-sale of the helicopters.  Rice Decl. ¶ 22; Ex. K.  That letter also states that Soars "intend[ed] on contacting Haus regarding [his] position."  Id.  Less than a week later, Soars sent Plaintiff a proposed settlement agreement.  Rice Decl. ¶ 23; Ex. L.  In that proposed agreement, Soars requested $5,000,000 in exchange for the transfer of the approvals necessary for Plaintiff to honor its contract with the Philippines.  Id.  Plaintiff did not sign the proposed agreement.  See Rice Decl., Ex. L.

Around this time, Plaintiff claims that Soars—on behalf of WAG and ANL—sent letters to the Philippines, Germany, the government of the United States and Eagle, and phoned Haus, falsely informing them that Plaintiff "was attempting to sell helicopters that it did not own the rights to and had illegally imported."  Rice Decl. ¶ 25; see, e.g., Compl.

---

[9] Plaintiff claims that "Nguyen was ultimately arrested on September 16, 2014, for his conduct related to the purchase and sale of the subject helicopters and is now facing charges in the Eastern District of Virginia for false impression in violation of 18 U.S.C. § 912, and wire fraud in violation of 18 U.S.C. § 1343."  Compl. ¶ 25 n.2.

¶ 28; Rice Decl., Ex. M.  As a result, Plaintiff contends that its performance on the Philippines contract was temporarily "blocked" because the State Department put Plaintiff under review, revoked Plaintiff's export licenses for the helicopters and required Plaintiff to obtain new licenses.  Rice Decl. ¶ 26.  Plaintiff contends that it did not obtain the ability to ship all parts of the helicopters until nine months later, in September 2014.  Id.  According to Plaintiff, this "detrimentally effected [sic] [Plaintiff's] business as a whole."  Id. ¶ 27.  Moreover, Plaintiff states that Soars' phone call to Haus caused extreme difficulties in Plaintiff's relationship with Haus and jeopardized Plaintiff's business and ability to complete its performance under the Philippines contract.  Id. ¶ 29.  Similarly, Plaintiff contends that Soars' letter to Eagle "caused [Eagle] to question [Plaintiff] about their partnership, thereby threatening . . . the sale of the helicopters . . . [and] Plaintiff's business as a whole."  Id.

Plaintiff contends that the Philippines contract was cancelled in April 2015 "because the Philippine government became concerned about [Plaintiff's] credentials, the legality of the sale and export of the helicopters, and the delays caused as the result of Soars' statements."  Id. ¶ 34.  Plaintiff claims it has lost the full amount of the Philippine contract as a result of Soars' alleged false statements.  Id. ¶ 35.

By way of this lawsuit, Plaintiff sets forth three causes of action against Defendants: (1) "Intentional Interference with Contract"; (2) "Interference with Economic Advantage"; and (3) "Defamation."  As a result of Defendants' conduct, Plaintiff claims the Philippines contract was "significant[ly] delayed and Plaintiff lost money as a result of, among other things, the costs of clearing up the false statements in Defendants' letters, the change in exchange rate between when [Plaintiff] originally bid on the contract and when [Plaintiff] ultimately received the contract and was able to open a Letter of Credit[10], . . . the financial penalties for late performance[,] . . . [and] injury to its business reputation."  Compl. ¶ 40, 48, 57.  Moving Parties now move to dismiss the

---

[10] In March 2014, after Plaintiff entered into the Philippines contract, a "Letter of Credit" was opened, reflecting an exchange rate of 45.35 Philippine Pesos ("PhP") to $1.00 for the sale of the helicopters.  In January 2013, the PhP to U.S. Dollar exchange rate was 40.46 to $1.00.

complaint against them on grounds that their contacts with California are insufficient to confer personal jurisdiction.

## STANDARD

### A. Personal Jurisdiction

A judgment rendered in violation of due process is void, and due process requires that a defendant be subject to the personal jurisdiction of the court. World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (citing Pennoyer v. Neff, 95 U.S. 714, 732–733 (1878); Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)). In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the defendant. Wash. Shoe Co. v. A–Z Sporting Goods Inc., 704 F.3d 668, 671 (9th Cir. 2012) (citation omitted). However, when the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a "prima facie showing of jurisdictional facts" to withstand the motion to dismiss. Id. at 672 (citing Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006)). The court resolves all disputed facts in favor of the plaintiff. Wash. Shoe, 704 F.3d at 672.

When there is no federal statute authorizing personal jurisdiction, the district court applies the law of the state in which the district court sits. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). California Code of Civil Procedure section 410.10, California's long-arm statute, is "coextensive" with federal due process requirements. Id. Accordingly, the "jurisdictional analyses under state law and federal due process are the same." Id.

There are two types of personal jurisdiction: general and specific. A court has general jurisdiction over a nonresident defendant when the defendant's contacts with the forum are "substantial" or "continuous and systematic." Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). The standard for establishing

general jurisdiction is an exacting standard that requires the defendant's contacts to approximate physical presence in the forum state. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004). Specific personal jurisdiction, on the other hand, exists when a defendant's "in-state activity is continuous and systematic and that activity gave rise to the episode-in-suit." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2853 (U.S. 2011) (citing Int'l Shoe, 326 U.S. 317) (internal quotation marks omitted). However, "the commission of certain 'single or occasional acts' in a State may be sufficient to render a [defendant] answerable in that State with respect to those acts . . . ." Id. (citation omitted).

### B. Leave to Amend

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

///
///
///

**ANALYSIS**

A.    **General Personal Jurisdiction**

"[O]nly a limited set of affiliations with a forum will render a defendant amendable to [general personal] jurisdiction there. 'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" Daimler AG v. Bauman, 134 S. Ct. 746, 760 (2014) (quoting Goodyear Dunlop Tires, 131 S. Ct. at 2853-54). A corporation is fairly regarded as "at home" where it is incorporated or has its principal place of business. Id.

Plaintiff does not specifically contend that the court may exercise general jurisdiction over Soars and ANL. However, even assuming Plaintiff intended to make such an argument, Moving Parties' dealings with California are not sufficiently "substantial" or "continuous and systematic" to regard Moving Parties as "at home" in California. See e.g., Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d at 1086; Daimler AG v. Bauman, 134 S. Ct. at 760. Soars is not domiciled in California. ANL is not incorporated in California, nor is California where it has its principal place of business. Moving Parties do not make sales in California, serve the state's markets, or hold any licenses there. See Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). Moreover, Plaintiff identifies only two occasions where Moving Parties have solicited or engaged in business in California: Plaintiff's sale of a helicopter to Soars in 2007 and the present business dealing giving rise to this action.[11] Rice Decl. ¶ 3; Rice Decl., Ex. A. Accordingly, an exercise of general personal jurisdiction over Moving Parties is not appropriate in California.

///

---

[11] To the extent Plaintiff argues that WAG's contacts with California are attributable to Soars, any contacts WAG established with California prior to Soars' alleged purchase of WAG cannot be attributed to Soars. See e.g., Boaz v. Boyle & Co., 40 Cal. App. 4th 700, 717 (1995) (relevant period for establishing minimum contacts is period during which claim arose); Cadle Co. II v. Fiscus, 163 Cal. App. 4th 1232, 1239 (2008).

B.  **Specific Personal Jurisdiction**

"When a plaintiff relies on specific personal jurisdiction, he must establish that jurisdiction is proper for 'each claim asserted against a defendant.'" Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004). However, "[i]f personal jurisdiction exists over one claim, but not others, the district court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same 'common nucleus of operative facts' as the claim for which jurisdiction exists." Id. (quoting Action Embroidery at 1181).

The Ninth Circuit employs a three-part test to determine whether a non-resident defendant has sufficient minimum contacts to be subject to specific personal jurisdiction:

> 1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; 2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and 3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Wash. Shoe, 704 F.3d at 672. If the plaintiff satisfies the first two elements, the burden shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would not be reasonable. Id. Exercising specific personal jurisdiction over a defendant is appropriate only if all three elements are established. Schwarzenegger, 374 F.3d at 805.

As set forth below, the Court finds that Plaintiff cannot meet the initial "effects test" for exercising personal jurisdiction over Moving Parties herein. Given that failure, the Court need not even consider whether either the second or third prongs of Washington Shoe's analytic framework have been satisfied. See id.

///

///

///

### 1. Effects Test

A plaintiff may satisfy the first part of the minimum contacts test by demonstrating that the defendant "either purposefully availed itself of the privilege of conducting activities in the forum, or purposefully directed its activities at the forum." Wash. Shoe at 672. In cases sounding in tort, courts typically apply the purposeful direction or "effects test," which requires that the defendant: 1) committed an intentional act, 2) expressly aimed at the forum state, 3) causing harm that the defendant knows is likely to be suffered in the forum state. Id. at 673. The effects test allows a court to exercise personal jurisdiction over a defendant who engages in an intentional act that causes harm in the forum state, even if that act takes place outside the forum state. Id.; see also Goodyear Dunlop Tires, 131 S. Ct. at 2857 (citing Calder v. Jones, 465 U.S. 783, 788, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)) ("When a defendant's act outside the forum causes injury in the forum . . . a plaintiff's residence in the forum may strengthen the case for the exercise of specific jurisdiction."). "In applying this test, a court must look to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014) (internal bracketing and quotations omitted). Therefore, "mere injury to a forum resident is not a sufficient connection to the forum." Id. at 1125. Rather, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." Id.

In the context of the effects test, the Ninth Circuit defines an intentional act as "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." Wash. Shoe, 704 F.3d at 674. In Washington Shoe, the Ninth Circuit found that the defendant committed an intentional act "by intentionally engaging in the actual, physical acts of purchasing and selling the allegedly infringing boots . . . ." Id. Here, Soars—on behalf of ANL— committed an intentional act by intentionally engaging in the actual, physical act of sending letters to

///

10

the Philippines, the government of the United States, Germany, Eagle, and placing a call to Haus.  Thus, Plaintiff satisfies the first element of the effects test.

The expressly aimed requirement of the effects test is met when the defendant's allegedly tortious action was "expressly aimed at the forum." Picot, 780 F.3d 1214 (quoting Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1129 (9th Cir. 2010).  The analysis "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." Picot, 780 F.3d 1214.  Furthermore, a plaintiff's injury must be "tethered to [the forum state] in [a] meaningful way," and "the plaintiff cannot be the only link between the defendant and the forum." Walden, 134 S. Ct. 1122, 1125.

All of Plaintiff's claims involve the same alleged tortious conduct; namely, that by sending letters containing false information to Plaintiff's business affiliates, Defendants intentionally interfered with the Philippines contract and defamed Plaintiff.  Accordingly, we must ask whether Moving Parties' expressly aimed their interference and defamation at California. See Picot at 1214.  Although these acts were intentional, Plaintiff cannot show that Moving Parties' conduct was "expressly aimed" at California.

First, while it is clear that Moving Parties knew Plaintiff was a business in California, Plaintiff has not put forth sufficient information to show that Moving Parties expressly aimed their conduct related to its intentional interference claims at California  Moving Parties allegedly interfered with the Philippines contract and Plaintiff's economic advantage by communicating false information to the Philippines, Germany, the State Department in Washington D.C., Eagle in Canada and Haus in California.  Compl. ¶¶ 28, 29; Rice Decl. ¶ 25.  Plaintiff claims that this conduct was ultimately done in an attempt to force Plaintiff to pay money to Defendants.  Compl. ¶ 29.  Furthermore, Plaintiff contends that Soars made the alleged false communications "to attempt to enforce a contract entered into in California to obtain a helicopter located in California."  Pl.'s Opp'n 8:7-11.  But regardless of whether Moving Parties intended to coerce a business in California to send them a helicopter located in California, their alleged "interference" was not expressly aimed at California.  Moreover, Plaintiff does not bring a claim against

11

Moving Parties for extorting a business in California to send a helicopter in California to Australia—Plaintiff's claims are for intentional <u>interference</u> with contract and economic advantage in connection with the sales of the helicopters to the Philippines.  That interference was simply not directed at California for purposes of conferring specific jurisdiction on Moving Parties herein.

Plaintiff also contends that "Soars' phone call to Haus caused extreme difficulties in [Plaintiff's] relationship with Haus . . . " and "further jeopardize[ed] [Plaintiff's] . . . ability to complete the sale of the helicopters."  Rice Decl. ¶ 29.  Although the "brunt" of the harm "need not be suffered in the forum state[,]"a "jurisdictionally sufficient amount of harm" must still be felt there.  <u>Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme</u>, 433 F.3d 1199, 1207 (9th Cir. 2006).  Given Plaintiff's contention that Moving Parties' communications to the State Department were what allegedly resulted in revocation of Plaintiff's export licenses for the helicopters, any communications made by Moving Parties to Haus cannot suffice to establish that a "jurisdictionally sufficient amount of harm" was suffered in California.  <u>See</u> <u>id.</u>  Accordingly, Plaintiff's intentional interference claims were not expressly aimed at California.

Similarly, Plaintiff's claim for defamation was not "expressly aimed" at California.  Besides the phone call to Haus, Moving Parties' alleged defamatory communications were made to individuals and entities outside of California.  Plaintiff's contention that the phone call to Haus "further jeopardiz[ed] [Plaintiff's] business" is too conclusory to establish that Plaintiff incurred a "jurisdictionally sufficient" amount of reputational harm in California; Haus' role appears to have been primarily in arranging for the purchase of the helicopters from Germany, whereas Moving Parties' alleged interference and defamation purportedly occurred when Plaintiff attempted to sell the helicopters to the Philippines.

This case is a far cry from <u>Calder</u>, where the Florida-resident defendants expressly aimed their conduct at California by circulating an allegedly libelous article

///

about the plaintiff in California.  Calder v. Jones, 465 U.S. 783, 784-85 (1984).  In that case,

> [t]he allegedly libelous story concerned the California activities of a California resident.  It impugned the professionalism of an entertainer whose television career was centered in California.  The article was drawn from California sources . . . .  In sum, California is the focal point both of the story and the harm suffered.

Id. at 788-89.  Here, the alleged defamation concerned the legitimacy of Plaintiff's approvals from the State Department to export the helicopters to the Philippines—it does not concern "California activities."  Id.  Furthermore, Plaintiff's business has customers "domestically and internationally," suggesting that its "career" is not centered in California.  Moreover, Moving Parties did not obtain the alleged defamatory information from "California sources."  Id.  In this case, California is not the focal point of Moving Parties' communicating alleged defamatory statements. Id.  Accordingly, Moving Parties did not expressly aim their allegedly defamatory statements at California.

     Moving Parties' Motion is therefore properly granted on grounds that Plaintiff cannot establish that the conduct underlying its claims for either intentional interference or for defamation was expressly aimed at California so as to justify the exercise of personal jurisdiction over Moving Parties.  Because Plaintiff cannot meet its burden in establishing such jurisdiction against Moving Parties in the absence of that showing, the court need not address the third and final component for satisfying the effects test.

///
///
///
///
///
///
///
///

**CONCLUSION**

For the foregoing reasons, Moving Parties' Motion to Dismiss (ECF No. 16) is GRANTED.  Because Plaintiff has identified no scenario, either in its Complaint or in opposition to Moving Parties' motion, under which Moving Parties' contacts with California would be sufficient to confer personal jurisdiction, allowing leave to amend at this point would be an exercise in futility.  Plaintiff's claims against Moving Parties are therefore DISMISSED without leave to amend.  See Ascon Props., Inc., 866 F.2d at 1160.  Plaintiff may continue to proceed with his claims against the remaining Defendants, Wieland Aviation Group and Peter Wieland.

IT IS SO ORDERED.

Dated:  December 9, 2015

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT