| | |
|---|---|
| RICE AIRCRAFT SERVICES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PATRICK SOARS, et al.,<br><br>Defendants. | No. 2:14-cv-2878 MCE DB<br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

This action came before the court on March 16, 2018, for hearing of plaintiff's motion for default judgment. (ECF No. 46.) Attorney Avalon Johnson Fitzgerald appeared on behalf of the plaintiff. No appearance was made by, or on behalf of, any defendant.

Having considered all written materials submitted with respect to the motion, and after hearing oral argument, the undersigned recommends that plaintiff's motion be denied because the court lacks personal jurisdiction over the defendants, as explained below.

BACKGROUND

Plaintiff Rice Aircraft Services, Inc., commenced this action on December 10, 2014, by filing a complaint and paying the required filing fee. (ECF No. 1.) The complaint alleges that plaintiff, a California corporation, specializes in maintaining, repairing, servicing, training, and

////

////

1

selling Bell Helicopters. (Compl. (ECF No. 1) at 2.[1]) In 2011, plaintiff and defendant Wieland Aviation Group, ("WAG"), an Australian corporation, "discussed entering into a partnership" to purchase twenty military-grade helicopters from the Federal Republic of Germany. (Id. at 2-3.) However, defendant Peter Wieland, ("Wieland"), a resident and citizen of Australia, "and his companies went into receivership in 2013." (Id. at 2-3.) Plaintiff was "forced to use a substantial amount of its own funds to purchase the subject helicopters from the German government." (Id. at 3.)

Plaintiff transferred the helicopters to the United States and entered into a partnership with EagleCopters Ltd., ("Eagle"), to sell the subject helicopters to the government of the Philippines. (Id. at 4.) Plaintiff later discovered that an individual relied on by plaintiff to assist in the sale of the helicopters, Thach Nguyen, ("Nguyen"), had obtained "illegitimate" approvals. (Id.) Nonetheless, in December of 2013, plaintiff entered "into a contract with the government of the Philippines" for the sale of the subject helicopters. (Id.)

"Defendants and Nguyen demanded that [plaintiff] pay them a portion of the profits from the sale of the subject helicopters to the Philippine government." (Id. at 5.) Plaintiff "made it clear that Defendants were not entitled to payment for the sale of the subject helicopters, as they were not partners of Rice for the purchase and sale of the helicopters[.]" (Id.) Thereafter, on behalf of defendant WAG and defendant Australian Native Landscapes PTY LTD, ("ANL"), an Australian proprietary limited company, defendant Wieland and defendant Patrick Soars, ("Soars"), also a resident and citizen of Australia, sent false statements "to not only the government of the Philippines, but also the government of the United States, the German Government," and Eagle. (Id.) Because of the false statements, the contract with the Philippine government was delayed and plaintiff incurred costs and penalties. (Id. at 5-6.) Based on these allegations, the complaint asserts causes of action for: (1) interference with contractual relations; (2) interference with prospective economic advantage; and (3) defamation. (Id. at 6-10.)

---

[1] Page number citations such as this, are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

2

Plaintiff filed proofs of service on the defendants on March 13, 2015, March 16, 2015, and March 24, 2015. (ECF Nos. 6-9.) On April 17, 2015, defendant Soars and defendant ANL filed a motion to dismiss for lack of personal jurisdiction. (ECF No. 16.) That same day plaintiff filed a request for entry of default as to defendant Wieland and defendant WAG. (ECF No. 21.) On April 24, 2015, the Clerk entered their default. (ECF No. 23.) On December 9, 2015, the assigned District Judge granted defendant Soars and defendant ANL's motion to dismiss for lack of personal jurisdiction. (ECF No. 31.)

On January 9, 2018, plaintiff filed the pending motion for default judgment against the remaining defendants—defendant Wieland and defendant WAG. (ECF No. 40.) On February 6, 2018, the undersigned issued an order continuing the hearing of the motion for default judgment and directing plaintiff to serve notice of the motion and hearing on the defendants. (ECF No. 43.) Plaintiff filed proof of service on February 9, 2018. (ECF No. 44.) Plaintiff filed a supplemental reply on March 9, 2018. (ECF No. 45.)

On March 16, 2018, plaintiff's motion for default judgment was heard before the undersigned. No appearance was made by, or on behalf of, any defendant. (ECF No. 46.) On March 19, 2018, the undersigned issued an order directing plaintiff to file a supplemental memorandum addressing, in relevant part, why this court has personal jurisdiction over defendant Wieland and defendant WAG. (ECF No. 47.) Plaintiff filed a supplemental memorandum on April 9, 2018. (ECF No. 48.)

ANALYSIS

I. Personal Jurisdiction

Plaintiff's motion seeks entry of default judgment against defendant Wieland and defendant WAG on the complaint's tort claims of interference with contractual relations, interference with prospective economic advantage, and defamation. (Pl.'s MDJ (ECF No. 40-1) at 5, 15.) "When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999); see also Williams v. Life Sav. and Loan, 802 F.2d 1200, 1202 (10th Cir. 1986) ("Defects in personal jurisdiction . . . are

not waived by default when a party fails to appear or to respond."). "It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant." <u>Doe v. Unocal Corp.</u>, 248 F.3d 915, 922 (9th Cir. 2001).

### A. Plaintiff's Complaint

Here, plaintiff's complaint alleges that:

> In or about 2011, Rice and WAG discussed entering into a partnership for the purchase of the subject helicopters, such that Rice and WAG would share the costs of purchasing the subject helicopters and would then jointly refurbish and possibly sell the subject helicopters.

(Compl. (ECF No. 1) at 3.) Defendant Wieland and defendant WAG, however, "went into receivership in 2013." (<u>Id.</u>) According to the complaint, plaintiff "was unable to partner with WAG and Wieland for the purchase of the subject helicopters from Germany." (<u>Id.</u>) Instead, plaintiff purchased the subject helicopters and partnered with Eagle to sell the subject helicopters to the Philippines. (<u>Id.</u> at 4.)

In this regard, the complaint alleges that plaintiff "was unable to partner" with the defendants and that the defendants "have no right to the proceeds of the sale of the subject helicopter[s], as they were not partners of [plaintiff] for the purchase and sale of the helicopters." (<u>Id.</u> at 3, 5.) Based simply on these alleged facts, the undersigned could not find that plaintiff has satisfied its burden to establish the court's personal jurisdiction over the foreign defendants. Plaintiff, however, does not argue that the facts of the complaint alone establish personal jurisdiction.

### B. Plaintiff's Motion for Default Judgment

Plaintiff's motion for default judgement provides an additional, and slightly different, factual background than that asserted in the complaint. In this regard, the motion for default alleges that in December of 2010, "Bob Rice and Wieland discussed the possibility of Rice Aircraft and Wieland Aviation entering into a partnership to purchase the helicopters" from the German Department of Defense, with the goal of reselling those helicopters to the Philippines. (Pl.'s MDJ (ECF No. 40-1) at 5-6.) "They entered into a partnership agreement in December

////

2010 for this purpose."[2] (Id. at 6.) "Subsequently, on July 31, 2011, Rice Aircraft entered into a partnership agreement with Wieland and an individual named Thach Nguyen." (Id.)

Defendant Weiland, however, failed to pay his portion of the purchase costs. (Id. at 7.) Accordingly, "Rice Aircraft paid the full acquisition cost for the twenty helicopters," and Wieland "signed over all rights and claims to the helicopters." (Id.) In October of 2012, plaintiff "put out for bid," twenty-one helicopters to the Philippines." (Id. at 9.) "In April 2013, Rice Aircraft, Nguyen, and Wieland entered into an 'Amendment to the Partnership Agreement,' amending their July 31, 2011, agreement[.]" (Id.) The April 2013 amendment explained that Weiland failed to fulfill his financial obligations, and provided that Rice would bring in a new investor to assume Wieland's obligations.[3] (Id.)

The Philippine government accepted plaintiff's proposed sale in November of 2013, and on December 10, 2013, defendant Soars, on behalf of defendant WAG, engaged in the first wrongful action by sending a letter to Eagle claiming that plaintiff "was attempting to sell helicopters which it did not own and had imported illegally." (Id. at 10.) "Soars [also] took it upon himself to contact not only the Philippines but also the U.S. State Department, Germany, Eagle Copters, and Haus, [plaintiff's investor] in an effort to block the sale." (Id.) Defendant Weiland also sent a letter to the United States Office of Defense Trade Controls, dated January 14, 1014, asserting plaintiff's sale of helicopters to the Philippines "would violate International Traffic in Arms Regulations" and "to Germany" claiming plaintiff "did not own the helicopters that it was selling to the Philippines." (Id. at 11.)

Although the allegations found in the motion for default judgment provide additional insight into the parties' actions and business relationships, it remained unclear to the undersigned

---

[2] Included as an exhibit with plaintiff's motion for default judgment is a "PARTNERSHIP AGREEMENT" dated December 31, 2010. (Rice Decl., Ex. A. (ECF No. 40-2) at 13.) That agreement concerns "the exchange of a Super Huey and a T53-703 engine for other assets belonging to the Philippine Government." (Id.) The agreement provides that "[a]ny legal action regarding this Agreement shall be brought in the State and Federal Courts in any jurisdiction of the US." (Id. at 16.) Only Thach Nguyen and Peter Wieland signed that agreement. (Id. at 17.)

[3] Plaintiff's copy of this agreement is signed only by Robert Rice and Thach Nguyen. (Rice Decl., Ex L (ECF No. 40-2) at 97.)

1 how this court had personal jurisdiction over defendant Weiland, a resident and citizen of
2 Australia, or defendant WAG, an Australian corporation with its principal place of business in
3 Australia. (Compl. (ECF No. 1) at 2.)

### C. Plaintiff's Supplemental Memorandum

Accordingly, on March 19, 2018, the undersigned ordered plaintiff to address the basis for the court's personal jurisdiction over defendant Wieland and defendant WAG. (ECF No. 47.) Plaintiff's supplemental memorandum asserts the following three theories for the court's personal jurisdiction over the defendant Weiland and defendant WAG.

#### 1. Partnership Agreement Forum Selection Clause

In the supplemental brief filed on April 9, 2018, plaintiff asserts that "[b]ecause Wieland Aviation entered into a contract with Rice Aircraft under which it agreed to this Court's jurisdiction, this Court's exercise of jurisdiction is unquestionably proper." (Pl.'s Brief (ECF No. 48) at 8.) In support, plaintiff has provided a copy of a July 31, 2011 "PARTNERSHIP AGREEMENT," ("Partnership Agreement"). (Rice Decl., Ex. A (ECF No. 48-1) at 4). That agreement states that "the parties hereby establish business cooperation . . . to purchase certain aviation assets from the German Government."[4] (Id.) (emphasis added). The items purchased from the German Government were to be stored "in the USA or Australia[.]" (Id.) The agreement further provides that "[a]ny legal action regarding this Agreement shall be brought in the State and Federal Courts in any jurisdiction of the U.S." (Id. at 7) (emphasis added). That agreement is signed by Robert Rice, Thach Nguyen, and Peter Wieland.[5] (Id. at 8.)

As noted above, this action concerns plaintiff's tort claims. "The Ninth Circuit and courts in this circuit have recognized that the scope of a forum or venue selection clause is not necessarily limited to contract claims." Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co., 60 F.Supp.3d 1109, 1119 (E.D. Cal. 2014). "Whether a forum selection clause

---

[4] On March 19, 2018, plaintiff was ordered to provide the most recent partnership agreement bearing the parties' signatures. (ECF No. 47.) Plaintiff filed a copy of the June 31, 2011 partnership agreement.

[5] Defendant WAG is not mentioned in the July 31, 2011 Partnership Agreement.

6

applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988) ("because the tort causes of action alleged by Manetti–Farrow relate to the central conflict over the interpretation of the contract, they are within the scope of the forum selection clause").

> The scope of the claims governed by a forum selection clause depends upon the language used in the clause. In analogous contexts, the Ninth Circuit has found that provisions using the phrases 'arising under,' 'arising out of,' and 'arising hereunder' (collectively referred to as 'arising under' language) should be narrowly construed to cover only those disputes 'relating to the interpretation and performance of the contract itself.' In contrast, provisions that include or add phrases such as 'relating to' and 'in connection with' (collectively referred to as 'relating to' language) have a broader reach.

Robles v. Comtrak Logistics, Inc., No. 2:13-cv-0161 JAM AC, 2015 WL 1530510, at *3 (E.D. Cal. Apr. 3, 2015) (alterations, citations, quotations omitted).

Here, the wrongful conduct alleged against defendant Weiland and defendant WAG, however, is not regarding, and does not concern, the parties' July 31, 2011 Partnership Agreement. In this regard the complaint's causes of action concern defendants' alleged intentional interference with plaintiff's "contractual relationship with the Philippine government," intentional interference with plaintiff's economic advantage with respect to plaintiff's economic relationship with the Philippine government, and defamatory statements to Eagle and the governments of Germany, the Philippines, and the United States. (Compl. (ECF No. 1) at 6-9.) Those alleged wrongful actions by the defendants, are not "regarding" the July 31, 2011 partnership agreement "to purchase certain aviation assets from the German Government." (Rice Decl., Ex. A (ECF No. 48-1) at 4.)

Plaintiff argues that the forum selection clause found in the July 31, 2011 Partnership Agreement

> . . . easily encompasses Rice Aircraft's claims for intentional interference with contractual relations, intentional interference with prospective economic advantage, and defamation because these claims relate directly to the relationship created by the parties' agreements. Indeed, the clear impetus and motivation for the Wieland Defendants' tortious conduct was the souring of the parties' business relationship due to the Wieland Defendants' wrongful claim that Wieland Aviation, as opposed to Rice Aircraft, owned the twenty helicopters imported into California pursuant to the parties'

7

> agreements. In particular, the Wieland Defendants claimed that Wieland Aviation owned the twenty helicopters pursuant to the Service Agreement. Thus, apparently in pursuance of their claim that Wieland Aviation owns the helicopters, the Wieland Defendants purposefully engaged in their tortious conduct to derail Rice Aircraft's contract with the Philippines.
>
> Put differently, had Rice Aircraft never entered into the 2011 partnership agreement and 2011 Service Agreement with the Wieland Defendants, the Wieland Defendants would have never interfered with Rice Aircraft's contract with the Philippines and would have never defamed Rice Aircraft to Rice Aircraft's investor and business partner, the State Department, Germany, and the Philippines. These events only occurred because Rice Aircraft entered into a business relationship with the Wieland Defendants, as set forth in the parties' agreements, and because the Wieland Defendants took matters into their own hands to attempt to enforce their false claim that Wieland Aviation owned the helicopters.

(Pl.'s Brief (ECF No. 48) at 12-13.)

However, that the defendants would never have engaged in their tortious conduct "had Rice never entered into the 2011 partnership agreement" does not establish that plaintiff's tort claims are regarding the July 31, 2011 Partnership Agreement. Under plaintiff's logic, the court would have personal jurisdiction over any tort defendants committed against plaintiff because the "impetus" and "motivation" for the defendants' alleged tortious conduct would stem from "the souring of the parties' business relationship[.]" Such an expansive definition of "regarding" would essentially render any dispute between these parties subject to the forum selection clause. That is not consistent with the language of the clause.

The partnership agreement provided that any legal action regarding the agreement to purchase certain aviation assets from the German Government" could be brought in this court. (Rice Decl., Ex. A (ECF No. 48-1) at 4, 7.) But in this action, no party is disputing, challenging, or placing at issue the July 31, 2011 partnership agreement to purchase the subject helicopters from the German Government. Instead, this action is regarding defendant Wieland and defendant WAG's allegedly tortious conduct concerning plaintiff's dealings with the Philippine Government, the United States' Government, and Eagle. The mere fact that the parties had a prior partnership agreement does not establish that this action is regarding that partnership agreement.

Accordingly, even adopting a broad construction, the undersigned finds that the complaint's claims against defendant Wieland and defendant WAG are not regarding the parties' July 31, 2011 Partnership Agreement.  Cf. Digital Envoy, Inc. v. Google, Inc., 319 F.Supp.2d 1377, 1380-81 (N.D. Ga. 2004) ("Digital Envoy's claims in this case clearly 'regard' the license agreement, as they regard alleged activities that may or may not be covered by the agreement and, indeed, they will almost certainly fail if Google's use of its technology is found to be within the scope of the agreement.").

    2.    Service Agreement Forum Selection Clause

According to plaintiff's motion for default judgment, in August of 2011, defendant WAG "signed a contract with Germany for the purchase of twenty German UH-1 Helicopters for $1.7 million." (Pl.'s MDJ (ECF No. 40-1) at 6.)

> The parties entered into a 'Service Agreement,' dated September 13, 2011, which designated Wieland Aviation as the 'end user' and Rice Aircraft as the 'service center.'  The Service Agreement provided that Wieland Aviation would ship the helicopters to Rice Aircraft in California, where Rice Aircraft would perform all necessary work on the helicopters, and that Rice Aircraft would then ship the helicopters to Wieland Aviation in Australia.

(Id.)

Plaintiff's supplemental memorandum argues that "Rice Aircraft's claims are also covered by" this 2011 Service Agreement.  (Pl.'s Brief (ECF No. 48) at 13.)  Plaintiff has submitted a copy of the parties' September 13, 2011 Service Agreement, ("Service Agreement"), which provides that "[a]ny proceedings arising from a dispute or claim in connection with this Agreement may be brought in the Courts of California, USA to which jurisdiction the parties hereby non-exclusively submit." (Rice Decl. Ex E (ECF No. 40-2) at 59.)

The Service Agreement, however, states simply that defendant WAG, the "End User," agreed "to send and deliver to" plaintiff, the "Service Center," the subject helicopters so that plaintiff could "perform the inspection, components overhaul and painting of these aircrafts."  (Id. at 58.)  "Upon completion of the work," plaintiff was to "deliver these units back to" defendant WAG.  (Id.)  That agreement "constitute[d] the entire agreement between the parties . . . relating to the subject matter" of the agreement.  (Id. at 59.)

9

1    Plaintiff argues that the 2011 service agreement provides a basis for personal jurisdiction because "the Wieland Defendants claimed that Wieland Aviation was the owner of the twenty helicopters pursuant to the Service Agreement[.]" (Pl.'s Brief (ECF No. 48) at 14.) However, the exhibits cited by plaintiff, and provided as evidence of defendants' alleged tortious conduct, do not support that characterization of defendants' conduct.

Specifically, plaintiff has provided a copy of a December 10, 2013 letter. (Rice Decl., Ex. R (ECF No. 40-2) at 187.) The letter is from defendant Soars, as the Managing Director of defendant ANL, to Eagle. (Id.) Therein, Soars asserts that he is also the director of defendant WAG. (Id.) Soars goes on to claim that he possess "paperwork" that "confirms that [WAG] was the purchaser and the ultimate end user" of the subject helicopters "under the US State Department approvals number GC2587-09 dated the 7th day of December 2009 as well as the import approvals from the Australian Government No. DED.MIC8036968899975. . . with full approvals for the re-sale of the aircraft to any third party." (Rice Decl., Ex. R (ECF No. 40-2) at 187.) The letter further explains that the subject helicopters were transferred to plaintiff only "for maintenance and repair service" and that plaintiff cannot sell the subject helicopters to any third party because defendant WAG "has not completed the required end use transfer" to plaintiff. (Id.) The letter does not claim that Wieland Aviation was the owner of the twenty helicopters pursuant to the Service Agreement.

Plaintiff has also provided a copy of a January 14, 2014 letter from defendant Wieland and Thach Nguyen, on defendant WAG's letterhead, to a Mr. Glenn E. Smith, Chief of Compliance & Enforcement Division, Office of Defense Trade Controls in Washington, DC. (Rice Decl, Ex. W (ECF No. 40-2) at 202-06.) That letter also acknowledges the parties' Service Agreement "for the maintenance and inspection" of the subject helicopters. (Id. at 203.) However, the argument found in the letter is that the Office of Defense Trade Controls had approved defendant WAG as the "Ultimate End-User" of the subject helicopters pursuant to "Approval No. GC2587-09 . . . on or about December 7th, 2009[.]" (Id. at 202.) The letter alleges that plaintiff was attempting to sell the subject helicopters to the Philippine government "without prior re-export and end user retransfer approval." (Id. at 202-03.) Again, the letter does

not claim that Wieland Aviation was the owner of the twenty helicopters pursuant to the Service Agreement.

Also submitted by plaintiff is a copy of an undated letter from defendant Wieland, on behalf of defendant WAG, that appears to have been attached to a February 19, 2014 email to a Klaus Ohlig. (Rice Decl., Ex X (ECF No. 40-2) at 208-09.) Therein, defendant Weiland states, "*we have not sold or transferred*," the subject helicopters to plaintiff." (Id. at 209) (emphasis in original). Moreover, the letter states that defendant WAG has "filed our formal notification of ITAR violation with the US State Department" accusing plaintiff of "illegally" assuming "end user right," and selling the subject helicopters "to the Government of the Philippine (sic) without approval." (Id.) Once again, the letter does not claim that Wieland Aviation was the owner of the twenty helicopters pursuant to the Service Agreement.

In this regard, putting aside the veracity of the allegations found in these exhibits, it cannot be said that these exhibits establish that defendants were asserting ownership of the subject helicopters pursuant to the parties' Service Agreement. Accordingly, the undersigned finds that the complaint's tort claims of intentional interference with plaintiff's contractual relationship, intentional interference with plaintiff's economic advantage, and defamatory statements with respect to Eagle and the governments of the Philippines, the United States, and Germany do not arise from a dispute or claim in connection with the 2011 Service Agreement. This is so even under a broad interpretation of the Service Agreement's forum selection clause.

### 3. Specific Personal Jurisdiction[6]

Plaintiff also argues that the court has specific personal jurisdiction over defendant Weiland and defendant WAG. (Pl.'s Brief (ECF No. 48) at 14-26.) "Federal courts ordinarily

---

[6] Specific personal jurisdiction is found where "[a] nonresident defendant's discrete, isolated contacts with the forum support jurisdiction on a cause of action arising directly out of its forum contacts[.]" CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1075 (9th Cir. 2011). "[T]hat is, jurisdiction [is] based on the relationship between the defendant's forum contacts and plaintiff's claims." Menken v. Emm, 503 F.3d 1050, 1057 (9th Cir. 2007). Conversely, general personal jurisdiction is found where the nonresident defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). Here, plaintiff does not assert that the court has general personal jurisdiction over the defendants.

follow state law in determining the bounds of their jurisdiction over persons." Daimler AG v. Bauman, 571 U.S. 117, 125 (2014). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800-01 (9th Cir. 2004).

"For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Mavrix Photo, Inc. v. Brand Technologies, Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)) (internal quotation marks omitted). However, "the 'primary concern' is 'the burden on the defendant.'" Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County, 137 S. Ct. 1773, 1780 (2017) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

A three-part test has been developed by the Ninth Circuit to analyze an assertion of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802 (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)).

The burden is the plaintiff's for the first two prongs. Id. If plaintiff carries that burden, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of

12

jurisdiction would not be reasonable." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985)).

a. Purposeful Direction

"The first prong of the specific jurisdiction test refers to both purposeful availment and purposeful direction." CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1076 (9th Cir. 2011). "Where, as here, a case sounds in tort, we employ the purposeful direction test." Axiom Foods, Inc. v. Acerchem International, Inc., 874 F.3d 1064, 1069 (9th Cir. 2017). "The 'purposeful direction' or 'effects' test is based on Calder v. Jones, 465 U.S. 783 (1984))." Washington Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 673 (9th Cir. 2012). "Under this test, 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)).[7]

Here, with respect to the first Calder prong, defendants committed an intentional act by sending correspondence to the government of the Philippines, the government of the United States, Germany, and Eagle. See Washington Shoe, 704 F.3d at 674 ("We have little difficulty finding that by intentionally engaging in the actual, physical acts of purchasing and selling the allegedly infringing boots, A–Z has clearly committed an 'intentional act' within the meaning of the Calder test.").

With respect to Calder's second prong—whether defendants' conduct was expressly aimed at California—plaintiff argues:

> The Wieland Defendants purposefully and knowingly entered into a business relationship with a California citizen, Rice Aircraft, to import twenty military-grade helicopters from Germany into California. Once refurbished, these helicopters were to be transferred from California to the Wieland Defendants in Australia. During the course of the parties' business relationship, the Wieland

---

[7] As noted above, plaintiff bears the burden of satisfying the Calder test. See Schwarzenegger, 374 F.3d at 807 ("Because Schwarzenegger has failed to sustain his burden with respect to the second part of the Calder effects test, we need not, and do not, reach the third part of the test.").

> Defendants entered into contracts with Rice Aircraft that were governed by the laws of California and/or the United States, and which specified California and/or the United States as the forum for resolution of disputes relating to those contracts. The Wieland Defendants also caused money to be transferred to Rice Aircraft in California. When the parties' business relationship crumbled, the Wieland Defendants asserted that Wieland Aviation owned the helicopters pursuant to the parties' agreements, and sought to enforce its false claims by taking action to derail Rice Aircraft's contract to sell those helicopters to the Philippines. Due to the Wieland Defendants' actions, many of the helicopters remain in California. In addition to significant financial losses suffered in California, the Wieland Defendant's actions caused tremendous harm to Rice Aircraft's reputation in California. Thus, most, if not all, of the Wieland Defendants' intentional acts were "expressly aimed" at California.

(Pl.'s Brief (ECF No. 48) at 18-19.)

In this regard, plaintiff argues that "Calder does not require that all—or even *any*—of the jurisdictionally relevant effects to be caused by the defendant's *wrongful* acts," but instead "must only be caused by the defendant's *intentional* acts." (Pl.'s Brief (ECF No. 48) at 19) (emphasis in original) (citing Yahoo!, 433 F.3d at 1207-08). According to plaintiff, "the Court must consider not only the Wieland Defendants' wrongful conduct, but *all* of the Wieland defendants' many intentional acts that were aimed at California." (Pl.'s Brief (ECF No. 48) at 19) (emphasis in original).

However, "'express aiming,' asks whether <u>the defendant's allegedly tortious action</u> was 'expressly aimed at the forum.'" Picot v. Weston, 780 F.3d 1206, 1214 (9th Cir. 2015) (emphasis added). As recently explained by the Supreme Court:

> In order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum. In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. For this reason, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.

Bristol-Myers, 137 S.Ct. at 1780 (2017) (alterations, citations, quotation marks omitted).

Thus, "to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." Walden, 134 S. Ct. at 1121.

14

"[W]e must 'look[ ] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" Picot, 780 F.3d at 1214 (quoting Walden 134 S. Ct. at 1122).

The issues deriving from, or connected with, the controversy in this action are not the parties' Partnership Agreement to purchase helicopters from the government of Germany, the parties' Service Agreement, the transfer of money, or the fact that many of the helicopters remain in California. Instead, this action concerns defendant Weiland and defendant WAG's alleged tortious conduct of intentionally interfering with plaintiff's contract with the government of the Philippines and defamatory communications to third parties outside of California.

As explained by the assigned District Judge's December 9, 2015 order finding that the court lacked personal jurisdiction over defendant Soars and defendant ANL:

> All of Plaintiff's claims involve the same alleged tortious conduct; namely, that by sending letters containing false information to Plaintiff's business affiliates, Defendants intentionally interfered with the Philippines contract and defamed Plaintiff. Accordingly, we must ask whether [defendants] expressly aimed their interference and defamation at California. Although these acts were intentional, Plaintiff cannot show that [defendants'] conduct was 'expressly aimed' at California.
>
> First, while it is clear that [defendants] knew Plaintiff was a business in California, Plaintiff has not put forth sufficient information to show that [defendants] expressly aimed their conduct related to its intentional interference claims at California[.] [Defendants] allegedly interfered with the Philippines contract and Plaintiff's economic advantage by communicating false information to the Philippines, Germany, the State Department in Washington D.C., Eagle in Canada and Haus in California. Plaintiff claims that this conduct was ultimately done in an attempt to force Plaintiff to pay money to Defendants. Furthermore, Plaintiff contends that Soars made the alleged false communications to attempt to enforce a contract entered into in California to obtain a helicopter located in California. But regardless of whether [defendants] intended to coerce a business in California to send them a helicopter located in California, their alleged "interference" was not expressly aimed at California. Moreover, Plaintiff does not bring a claim against [defendants] for extorting a business in California to send a helicopter in California to Australia—Plaintiff's claims are for intentional interference with contract and economic advantage in connection with the sales of the helicopters to the Philippines. That interference was simply not directed at California for purposes of conferring specific jurisdiction on [defendants] herein.

\*\*\*

15

> Similarly, Plaintiff's claim for defamation was not "expressly aimed" at California. Besides the phone call to Haus, [defendants'] alleged defamatory communications were made to individuals and entities outside of California. Plaintiff's contention that the phone call to Haus "further jeopardiz[ed] [Plaintiff's] business" is too conclusory to establish that Plaintiff incurred a "jurisdictionally sufficient" amount of reputational harm in California; Haus' role appears to have been primarily in arranging for the purchase of the helicopters from Germany, whereas [defendants'] alleged interference and defamation purportedly occurred when Plaintiff attempted to sell the helicopters to the Philippines.

Rice Aircraft Services, Inc. v. Soars, No. 2:14-cv-2878 MCE EFB, 2015 WL 8481609, at *6-7 (E.D. Cal. Dec. 9, 2015).

Plaintiff argues that the "Wieland Defendants' intentional acts are far broader," than the intentional acts considered by the assigned District Judge with respect to defendant Soars and defendant ANL. (Pl.'s Brief (ECF No. 48) at 19.) That may be true. Nonetheless, the parties' partnership agreement provided simply that the parties would "purchase certain aviation assets from the German Government" and "store all items bought from the German Government . . . in the USA or Australia, and/or whichever location is more advantageous to the parties." (Rice Decl., Ex. A (ECF No. 48-1) at 4.) Defendant Weiland and defendant WAG's suit related conduct consists of sending letters containing false information to plaintiff's business affiliates, intentional interference with the Philippines contract and defamatory communications to third parties outside of California. And the acts referred to by plaintiff—the parties' business relationship, the transfer of money to plaintiff in California, the harm to plaintiff's reputation—concern defendants' contacts with plaintiff, not the state of California.

In this regard, defendants' suit related conduct has not created a substantial connection with California. See Walden, 134 S. Ct. at 1126 ("Petitioner's relevant conduct occurred entirely in Georgia, and the mere fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction."); Picot, 780 F.3d at 1215 ("Weston's actions did not connect him with California in a way sufficient to support the assertion of personal jurisdiction over him. Weston's allegedly tortious conduct consists of making statements to Coats (an Ohio resident) that caused HMR (a Delaware corporation with offices in Ohio) to cease making payments into two trusts (in Wyoming and Australia). Weston did all this from his

16

residence in Michigan, without entering California, contacting any person in California, or otherwise reaching out to California.").

Because plaintiff cannot establish defendants' conduct was expressly aimed at California, plaintiff cannot satisfy the Calder test. Accordingly, the undersigned finds that plaintiff has failed to meet its burden in establishing that the court has personal jurisdiction over defendant Weiland or over defendant WAG.

CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that plaintiff's January 9, 2018 motion for default judgment (ECF No. 40) be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after these findings and recommendations are filed, any party may file written objections with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 28, 2018

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.civil\rice2878.mdj.f&rs

17